

ORIGINAL



91
5/28/0

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH B. GORINI, | : | CIVIL ACTION NO. 1:CV 99-2215 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE YVETTE KANE |
| | : | |
| AMP INCORPORATED or its Successor | : | |
| In Interest, TYCO ELECTRONICS | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | |



FILED
HARRISBURG, PA
MAY 24 2002

## TYCO ELECTRONICS CORPORATION'S
## POST-TRIAL MEMORANDUM OF LAW

1-HA/100277.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................iii

I.      ARGUMENT ...................................................................................1

    A.      Plaintiff's Acceptance And Retention Of The Enhanced Severance
        Benefit Ratified The Release And Bars All Of His Claims..........................1

    B.      Plaintiff's Retention Of The Enhanced Severance Payment Operates
        As An Accord And Satisfaction Of His Claims................................4

    C.      Plaintiff Is Not Entitled To Additional Severance ...........................5

        1.      *De Novo* Standard of Review............................................5

        2.      Plaintiff is not Entitled to any Benefits Under the Terms
            of the 1991 Plan .................................................................7

        3.      Plaintiff is not Entitled to any Additional Benefits Under
            the Terms of the 1998 Plan ................................................8

    D.      Plaintiff's "Single Site of Employment" Did Not Experience A
        WARN Event ....................................................................10

        1.      449 Eisenhower Boulevard did not experience a WARN
            event ...............................................................................10

        2.      The "Friendship Road Campus" is not a "single site of
            employment"...................................................................11

        3.      Alternatively, The "Friendship Road Campus" did not
            experience a WARN event.................................................12

    E.      Plaintiff Is Not Entitled To Additional Vacation Pay......................13

    F.      Alternatively, If Plaintiff Is Not Bound By The Release, TYCO
        is Entitled To The Return Of The Enhanced Severance Amount...............14

    G.      Alternatively, If Plaintiff's Separation Was A WARN Event, TYCO
        Is Entitled To An Offset Under The Terms Of The 1998 Plan....................14

II.     CONCLUSION.................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139 (3d Cir. 1998) ...........11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989) ................5,6

*Frymire v. Ampex Corp.*, 61 F.3d 757 (10th Cir. 1995) ...................................12

*Goldstein v. Johnson & Johnson*, 2000 U.S. Dist. LEXIS 20932 (D. N.J. 2000),
    aff'd., 251 F.3d 433 (3d Cir. 2001) ...............................................5

*Heasley v. Belden & Blake Corp.*, 2 F.3d 1249 (3d Cir. 1993) .........................5

*Johnson v. Telespectrum Worldwide, Inc.*, 61 F.Supp. 2d 116, 121 (D. Delaware
    1999), aff'd., 29 Fed. Appx. 76, 2002 WL 54693 (3d Cir. 2002) ...............10

*Marsh v. Crucible Inc.*, 783 F.Supp. 938 (W.D. Pa. 1992), aff'd. without op., 977
    F.2d 568 (3d Cir. 1992) ...........................................................5

*Sea-Land Service, Inc. v. Sellan*, 64 F.Supp. 2d 1255 (S.D. Fla. 1999) ............3

*Taylor v. Continental Group*, 933 F.2d 1227 (1991) .............................6

*Thompson v. D.C. America, Inc.*, 951 F.Supp. 192 (M.D. Al. 1996) ................3

## STATE CASES

*Hartzfeld v. Snyder Township School District*, 170 A.2d 355 (Pa. 1961) ........14

*Hess v. Evans*, 431 A.2d 347 (Pa. Super 1981) ...............................1

*Law v. Mackie*, 95 A.2d 656 (Pa. 1953) .......................................4

*Rutherford v. Presbyterian-University Hospital*, 417 Pa. Super. 316 (1992) ..........14

*Walker v. Harbison*, 128 A. 732 (Pa. 1925) ...................................1

*Wojeciechowski v. Spreckels Sugar Refining Co.*, 35 A. 596 (Pa. 1896) ...........1

## FEDERAL STATUTES

20 C.F.R. § 639.3(i)(1) (1995) ..................................................11

20 C.F.R. § 639.3(i)(4)(1995) ..................................................13

20 C.F.R. § 639.3(i)(5)(1995) ...................................................................11

29 U.S.C. § 1132(a)(3) ..........................................................................15

29 U.S.C.A. § 2101, et seq. ....................................................................10

29 U.S.C.A. §2101(a)(2-3) .....................................................................10

DOL Comments, 54 Fed. Reg. 16042, 16049-16050 ...............................11

## MISCELLANEOUS

1 P.L.E. *Accords and Compromises* § 1, et seq. ......................................4

31 P.L.E. *Release* § 17 ...........................................................................1

Restatement (Second) of Trusts § 4, Comment d (1959)...........................6

TYCO Electronics Corporation ("TYCO"), through its attorneys, hereby submits its Post Trial Memorandum of Law.

## I.   ARGUMENT

### A.   Plaintiff's Acceptance And Retention Of The Enhanced Severance Benefit Ratified The Release And Bars All Of His Claims.

Pennsylvania has long recognized that an individual may, by subsequent actions, bind himself to the terms of an unexecuted agreement. Memorandum of Law Regarding the Release Issue ("Release Memo") at 1-4; see also Walker v. Harbison, 128 A. 732 (Pa. 1925); see generally 31 P.L.E. Release § 17. As the Court in Walker held: "It was appellant's duty to return the money to defendant as soon as he learned who had given it to him, if he sought to disavow his contract. **His use of the money effected a ratification of the release, and the law cannot tolerate any other conclusion.**" Walker, 128 A.2d at 733 (emphasis added); see also Wojeciechowski v. Spreckel's Sugar Refining Co., 35 A. 596 (Pa. 1896) (retention of money received for a release constitutes a ratification of the release); Hess v. Evans, 431 A.2d 347, 349 (Pa. Super 1981) (plaintiff's "use of the money affected a ratification of the release.").

Here, the Record established that:

(1) On March 30, 1999, AMP placed Plaintiff on notice that "a general release would be part of the severance package" for an anticipated reduction (P. Ex. 6).

(2) On May 10, 1999, TYCO gave Plaintiff notice it forwarded a general release to him (P. Ex. 3).

(3) On May 14, 1999, TYCO sent Plaintiff a letter offering him additional severance of $19,355 "in consideration for signing the enclosed Release and Related Agreements. . . ." (P. Ex. 4).

(4)   Sometime prior to June 23, 1999, Plaintiff received from TYCO a Release and Related Agreements (P. Ex. 5, D. Ex. 18).

(5)   Plaintiff was a business executive familiar with releases.

(6)   On June 23, 1999, Plaintiff's counsel sent TYCO a letter acknowledging that Plaintiff received the May 14, 1999 severance offer (P. Ex. 8).

(7)   On July 2, 1999, Plaintiff's counsel identified a dispute regarding disclosure of information she requested (P. Ex. 11).

(8)   On August 9, 1999, Plaintiff's counsel sent a letter to TYCO outlining disputes Plaintiff had with TYCO regarding the amount of severance he should have received; the amount of vacation pay to which he was entitled; and WARN pay to which he felt entitled (P. Ex. 16).

(9)   At the same time that Plaintiff's counsel wrote TYCO on August 9, 1999, she admitted that, "**[o]f course, it is understood that an executed release is required in order to obtain the enhanced severance. . . .**" (emphasis added).

(10) on August 25, 1999, Mark Smith wrote Plaintiff's counsel explaining TYCO viewed Plaintiff as a Tier III participant in the 1998 Plan entitled only to two months minimum salary; disputed any additional severance owed under the 1998 Plan; and reaffirmed the requirement to execute a release to receive additional severance (P. Ex. 18).

(11)  On September 3, 1999, Plaintiff's counsel wrote Mr. Smith to reiterate a dispute as to the amount owed Plaintiff under the 1998 Plan; took issue with Exhibits A and B forwarded to her by Mr. Smith on August 25, 1999; demanded additional information regarding Mr. Smith's position regarding additional severance

which TYCO might pay; reiterated a dispute as to the amount of WARN pay to which Plaintiff received; reiterated a dispute Plaintiff had with TYCO regarding the type of disclosure it made under ERISA; and reiterated a dispute he had with TYCO as to the amount of vacation pay he received (P. Ex. 19).

(12)  On or about September 30, 1999, Plaintiff received and negotiated a check in the amount of $19,355 designated as severance the precise sum referenced in TYCO'S May 14, 1999 benefit letter. (P. Exs. 4, 20 ).

(13)  Thereafter and pursuant to one or more telephone calls between Mr. Smith and Plaintiff's counsel, the parties understood that TYCO either sent the severance so that Plaintiff "would go away," or in consideration for an assumed release.

(14)  Plaintiff retained the September 30, 1999 severance funds well after he knew the sum was consideration for the release sent him.

(15)  TYCO demonstrated that the only reason that enhanced severance was sent to Plaintiff was in consideration for the release previously sent to him.

Therefore, effective no earlier than September 30, 1999, Plaintiff's continued retention of these funds operated as a ratification of, and bound Plaintiff to, the terms and conditions of the release.  Under Pennsylvania law, all of Plaintiff's claims are barred.  See Release Memo at 3-4.  See also Thompson v. D.C. America, Inc., 951 F.Supp. 192 (M.D. Al. 1996) (plaintiff's acceptance and retention of settlement funds for more than a year ratified the release in spite of the plaintiff's failure to sign the agreement or her express rejection of the agreement); Sea-Land Service, Inc. v. Sellan, 64 F.Supp. 2d 1255 (S.D. Fla. 1999).

**B.      Plaintiff's Retention Of The Enhanced Severance Payment Operates As An Accord And Satisfaction Of His Claims.**

Pennsylvania law regarding accord and satisfaction was established in Law v. Mackie, 95 A.2d 656, 660 (Pa. 1953); see generally 1 P.L.E. *Accords and Compromises* § 1, et seq. The Pennsylvania Supreme Court, in Mackie, held that the plaintiff's acceptance and retention of funds offered by the defendant to settle a disputed debt, in spite of the plaintiff's express rejection of the settlement terms, operated as an accord and satisfaction of the matter. Mackie, 95 A.2d at 660. The elements of accord and satisfaction are: (1) a disputed debt (2) a clear and unequivocal offer of payment in full satisfaction and (3) acceptance and retention of payment by the offeree. Id.

The Record establishes the necessary elements for the application of accord and satisfaction. From the outset, Plaintiff disputed TYCO's payment of severance to him. He later disputed the amount of WARN Act pay he received; the amount of pay he received for accrued but unused vacation; and for disclosure penalties under ERISA. Furthermore, the Record established that the September 30, 1999 check was tendered in exchange for a release of all of Plaintiff's claims. Plaintiff received and negotiated the September 30, 1999 severance check. He received the advice of counsel. He retained the funds even after TYCO demanded its return.

Thus, Plaintiff cannot genuinely claim he was unaware the funds were tendered in exchange for a release and settlement of all his claims. On the contrary and as Mackie makes clear, even though Plaintiff disagreed with the settlement offer, his acceptance and retention of those funds constitutes an accord and satisfaction of his disputed claims. Id. at 657, 660.

### C.   **Plaintiff Is Not Entitled To Additional Severance.**

#### 1.   *De Novo* **Standard of Review.**

Plaintiff previously argued the court should employ the doctrine of *contra proferentem*, essentially that ambiguous terms be construed against TYCO, for its *de novo* review.  However, the Third Circuit applies *contra proferentem* in the ERISA context only in instances where an insurance plan is at issue.  Heasley v. Belden & Blake Corp., 2 F.3d 1249 (3d Cir. 1993).

In Goldstein v. Johnson & Johnson, 2000 U.S. Dist. LEXIS 20932 * 1 (D. N.J. 2000), aff'd. 251 F. 3d 433 (3d Cir. 2001), the court acknowledged the Third Circuit's adoption of *contra proferentem* in ERISA insurance cases, noting, "the Court of Appeals was careful to point out the difference between . . .[the insurance context] and the interpretation of ERISA plan provisions governing other, non-insurance benefits."  Id. at * 49.  As the Goldstein court explained:

> One of the conceptual underpinnings of this contract-law doctrine is missing in this type of ERISA case (non-insurance).  Contra proferentum enforces the contractual intent of one party against ambiguity created by the other.  That bilateral consideration is missing in a retirement benefits case governed by principles of trust law, because in trust law it is the intent of the settlor that governs the resolution of ambiguity in the trust document.

Id. at * 50.  See also Marsh v. Crucible Inc., 783 F.Supp. 938, 945 (W.D. Pa. 1992), aff'd. without op. 977 F.2d 568 (3d Cir. 1992).

The Third Circuit's application of *contra proferentum* is consistent with the Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989), wherein the Court established the current *de novo* standard.  There, the Court

focused on principles of trust law, "consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA." Id. at 112. The Court reasoned, "ERISA abounds with the language and terminology of trust law. In determining the standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law." Id. at 110 citing Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc., 472 U.S. 559, 570 (1985). A primary purpose of *de novo* review is to give effect to the intent of the settlor.

> [C]ourts construe terms in trust agreements without deferring to either party's interpretation...the terms of trusts created by written instruments are determined by the provisions of the instrument as **interpreted in light of all the circumstances and such other evidence of the intention of the settlor** with respect to the trust as is not inadmissible.

Id. citing Restatement (Second) of Trusts § 4, Comment d (1959) (emphasis added).

In Taylor v. Continental Group, 933 F.2d 1227 (1991), the Third Circuit gave weight to the intent of the settlor (the plan sponsor) of a severance plan. There, an employee filed a claim for severance benefits which was denied. Id. 1229. The court noted, "in [Firestone], the Supreme Court quoted language [that] only the intent of the settlor is relevant." Id. at 1232. However, the Taylor Court found trust law principles could not be imported wholesale because severance plans often are similar to employment contracts, "whose interpretation requires determining the intent of both parties." Id.

Although this rationale seems a departure from Firestone, it is not:

> [A]s they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation...the terms of trusts created by written instruments are determined by

> the provisions of the instrument as **interpreted in light of all the circumstances and such other evidence of the intention of the settlor** with respect to the trust as is not inadmissible.

Id. at 1233 (emphasis added).  Thus, the Third Circuit expressly recognized the intent of the settlor as one of the more significant factors in resolving ambiguities.

### 2.   Plaintiff is not Entitled to any Benefits Under the Terms of the 1991 Plan.

The Record made clear that reference to "enhanced severance" in TYCO's May 14, 1999 notification letter to Plaintiff did not reference the 1991 Plan.  Plaintiff offered no evidence that the use of such a phrase was unique to the 1991 Plan; or that TYCO used the phrase for such reference.  Rather, Mr. Booker explained no one was offered a benefit under the 1991 Plan, and the use of the phrase "enhanced benefit" was not a term of art under ERISA.

Rather, its use was a short-form reference to consideration for a release.  In short, TYCO demanded a release and notified employees generally of that requirement on March 30, 1999, and Plaintiff specifically on May 14, 1999.  There, TYCO told Plaintiff he must execute a release if he were to receive an additional severance of $19,355.  The May 14, 1999 letter clarified Plaintiff was to receive $19,355 from the 1998 Plan and an additional $19,355 in consideration for a release.  Mr. Smith reaffirmed TYCO's position on August 25, 1999.  Then, Plaintiff's counsel outlined her disagreement with TYCO's position on September 3, 1999, and, for the first time, referenced the 1991 Plan.

Plaintiff took every opportunity to confuse the issue and create an undeserved entitlement.  If such a benefit was offered, it would have been offset by the

terms of the 1998 Plan. Plaintiff's attempt to contrive entitlement is obvious considering the practical effect of the offset; therefore, his attempt to muddy the issues is disingenuous.

### 3.    Plaintiff is not Entitled to any Additional Benefits Under the Terms of the 1998 Plan.

Plaintiff asserts he was a Tier I participant as a "management designated corporate staff director." He posits all directors must be Tier I participants as all directors were designated as such by management. Plaintiff's argument ignores the intent of the settlor. It ignores the other Tiers to the point of absurdity.

The true issue is which directors did management designate for Tier I participation. TYCO offered the following evidence of the settlor's intent:

- An August 10, 1998 Memorandum identifying a need to expand the "population" of severance plans to "cement in place through a change of control…critical individuals…most at peril after a change of control. **D. Ex. 14.**

- The minutes of the August 20, 1998 meeting of the Compensation Committee during which it adopted the outline for the 1998 Plan. The minutes define the composition of the tiers as: "Tier I is comprised of approximately 50 divisional officers and management designated corporate staff directors;….**D. Ex. 16**. Detailed in Attachment II is a breakdown of Tier I participants, which includes "Divisional Officers and Critical-Director Level Personnel (Mgmt. Selected)." **D. Ex. 16, attch. 2, pg. 2**.

- The March 30, 1999 e-mail sent to all managers from William Ward provided that Tier I was comprised of "divisional officers and management designated corporate staff directors," Tier II included "Band M level employees who have been granted stock options," and Tier III was "all other employees who are in the company's Band M." **P. Ex. 6.**

- Mr. Booker testified "management designated" referred to a management decision to designate certain directors as members of Tier 1.

- Mr. Booker testified "management designated corporate staff directors" were limited to three people whose continued employment during a

takeover fight was viewed by AMP/TYCO as critical – specifically, the director of communications, director of investor relations, and assistant comptroller.

- Mr. Booker identified those directors as Doug Wilburn, Richard Skaare, and Jackie Heisse, who occupied high profile, public positions, and reported directly to either the Board of Directors or the President/CEO.

- Mr. Booker and Mr. Cain testified no one received a Tier I benefit in connection with the April 1999 reduction in force.  All Tier I participants negotiated and received a personalized severance package.

Clearly, Plaintiff was not a director critical for resisting a takeover bid and that he received no nomination for stock options.  Consequently, Plaintiff did not fit the criteria for Tiers I or II.  Rather, Plaintiff fit the definition of Tier III, as Plaintiff conceded he was a Salary Band M employee.  Consistent with the intent of the settlor, Plaintiff was classified and provided severance as a Tier III participant.

Therefore, a *de novo* review inexorably results in the conclusion Plaintiff properly was classified and provided severance as a Tier III participant.[1]

---

[1] Contrary to this Court's earlier conclusion (before the benefit of a trial with witnesses and evidence) regarding the information not disclosed to Plaintiff about the 1991 and 1998 Plans, TYCO provided Plaintiff with detailed information serving to explain the terms of the 1998 Plan.  The March 30, 1999 e-mail provided most of the information that one would expect in a summary plan description, and certainly the most pertinent information to a beneficiary like the Plaintiff.  On August 25, 1999, Mr. Smith provided Plaintiff the equivalent of Exhibits A and B referenced in the 1998 Plan.  In sum, Plaintiff had sufficient information in his possession to determine the legitimacy of his claim to additional benefits under the 1998 Plan.  It was also clear that the 1991 Plan was not applicable since the 1998 Plan equaled or exceeded the 1991 Plan benefits (and required no release) and offsets the 1991 plan benefits as well.  Certainly, in light of evidence at trial, this Court's preliminary ruling that TYCO owes large ERISA penalties needs reexamination.

**D.**     **Plaintiff's "Single Site of Employment" Did Not Experience A WARN Event.**

Plaintiff bears the burden of proving a WARN event occurred.  <u>See</u> <u>Johnson v. Telespectrum Worldwide, Inc.</u>, 61 F.Supp.2d 116, 121 (D. Delaware 1999), <u>aff'd.</u> 29 Fed. Appx. 76, 2002 WL 54693 (3d Cir. 2002) ("Plaintiffs have the burden to prove their prima facie case.").  The Third Circuit held in <u>Telespectrum</u>, "[i]n order to prove their prima facie case, plaintiffs must show that a [mass layoff] occurred within the definitions set forth in the WARN Act." <u>Id.</u> at 121.

In order to prove his case, Plaintiff must demonstrate: (1) a WARN event occurred; (2) he was affected by the layoff; and (3) he was not notified at least 60 days prior to the layoff.  <u>See</u> 29 U.S.C.A. § 2101, <u>et seq.</u>  A mass layoff is defined as:

> **(3)** the term "mass layoff" means a reduction in force which –
> > **(B)** results in an employment loss at the single site of employment during any 30-day period for –
> >
> > > **(i)(I)** at least 33 percent of the employees (excluding any part-time employees); and
> > >
> > > **(II)** at least 50 employees (excluding any part-time employees); or
> > >
> > > **(III)** at least 500 employees (excluding any part-time employees).

29 U.S.C.A. §2101(a)(2-3).

**1.**     **449 Eisenhower Boulevard did not experience a WARN event.**

The Record establishes that TYCO separated 86 employees from its 449 Eisenhower Boulevard location.  However, Mr. Cain made clear that, at minimum, there were 260 employees there and more likely closer to 300.  Under the WARN Act, these

numbers do not demonstrate a WARN event.  In short, the 33% threshold was not met.

Moreover, 500 employees did not even work at 449 Eisenhower Boulevard.

> 2.   **The "Friendship Road Campus" is not a "single site of employment."**

The term "single site of employment" is not defined by the statute.  See

Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139 (3d Cir. 1998).  In light

of this failure, the Third Circuit holds that the Department of Labor ("DOL") regulations

must be given controlling weight unless they are "arbitrary, capricious, or manifestly

contrary to the statute."  Id. at 145, citing Chevron, USA Inc. v. Natural Resources

Defense Council, 467 U.S. 837, 843-844 (1984).

Pursuant to the relevant DOL regulations, a "single site of employment

can refer to either a single location or a group of contiguous locations."  20 C.F.R. §

639.3(i)(1) (1995).  Generally, geographically contiguous sites are considered a single

site of employment while geographically separate facilities are considered separate sites

of employment.   DOL Comments, 54 Fed.Reg. 16042, 16049-16050.  However,

contiguous buildings owned by the same employer which have separate management,

produce different products, and have separate work forces are considered separate single

sites of employment.  20 C.F.R. § 639.3(i)(5)(1995).

At trial, Plaintiff attempted to establish that the "Friendship Road

Campus" – a group of six contiguous buildings consisting of 441 Friendship Road, 470

Friendship Road, 3705 Paxton Street, 3711 Paxton Street, and 411 S. 40th Street was a

single site of employment under WARN.  In order to do so, he elicited testimony that

engineering services and information technology services were offered at several

locations.  However, this misses the mark.

The fact that the same or similar services are offered at different locations does not make the facilities a single site of employment, as these locations had different on-site management and separate workforces.  The occasional cross-assignment of employees is not the "'shifting,' 'rotating,' or even 'sharing' of employees that defines a non-'separate' workforce." <u>Frymire v. Ampex Corp.</u>, 61 F.3d 757, 767 (10th Cir. 1995).

Thus, the "Friendship Road Campus" should not be considered a single site of employment, as these separate locations maintained separate workforces and on site management, as well as Plaintiff's inability to prove they produced the same products.

### 3.    Alternatively, The "Friendship Road Campus" did not experience a WARN event.

Alternatively, if the court determines that the "Friendship Road Campus" is a "single site of employment," this campus is limited to the six, contiguous buildings noted above.  The Record demonstrates even this location failed to meet the required threshold of 500 employees suffering an employment loss.  **P. Ex. 34.**

Plaintiff attempts to avoid this outcome by trying to include other, non-contiguous sites within the "Friendship Road Campus."  In order for the non-contiguous locations to be considered a part of Plaintiff's "single site of employment," the DOL regulations provide:

> Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.  For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

20 C.F.R. § 639.3(i)(4)(1995). As TYCO proved that, while these locations had an engineering or IT function and were owned by the same employer, they provided different functions and were staffed by separate workforces. Therefore, these locations should not be included in the "Friendship Road Campus" under the DOL regulations.

Limited to the contiguous buildings on the "Friendship Road Campus," Plaintiff failed to prove that a WARN event occurred. The total number of employees suffering an employment loss at those locations was 390, well short of the statute's required 500. As the burden is on the Plaintiff to prove a WARN Act event occurred, Plaintiff cannot demonstrate that the 390 people was at least 33% of the total workforce at the "Friendship Road Campus," as he never elicited that information at trial. Under either analysis, Plaintiff failed to establish that a WARN Act event occurred.

E.    **Plaintiff Is Not Entitled To Additional Vacation Pay.**

At trial, TYCO demonstrated that agreements for additional paid-time off – whether referred to as vacation, compensatory time, or personal time – are not considered part of an employee's vacation accrual. Such time is maintained and administered by the employee's individual supervisor, and it is done without the approval or knowledge of Human Resources. As such, this time is not considered as vacation time under AMP/TYCO's pay in lieu of vacation policy in effect at the time of Plaintiff's separation.

Moreover, even if the understanding between Plaintiff and Mr. Vance is enforceable under Pennsylvania law, it must be enforced consistent with its terms. Those terms limited its application to when Plaintiff worked in System Services. As of April 1, 1998, Plaintiff no longer worked there and the understanding no longer was enforceable.

Moreover, under Pennsylvania law, employee handbooks and the terms and conditions of employment are not contractual in nature. See <u>Rutherford v. Presbyterian-University Hospital</u>, 417 Pa. Super. 316 (1992). Thus, Plaintiff's labeling his vacation understanding as a "contract" or "agreement" adds nothing to the analysis. Consequently, Plaintiff cannot succeed on his "breach of contract" claim under Pennsylvania's common-law of contracts. Rather, Plaintiff's vacation pay claim must be brought under Pennsylvania Wage Payment and Collection Law.

However, this Court denied Plaintiff's request to amend his complaint to include such a claim. Thus, Plaintiff's claim is barred by the express terms of the agreement, AMP vacation policy, and by defects in his complaint.

**F.     Alternatively, If Plaintiff Is Not Bound By The Release, TYCO Is Entitled To The Return Of The Second Severance Amount.**

If this Court does not find Plaintiff is bound by the release( as is clearly the law), TYCO would be entitled to the return of the funds represented by the September 30, 1999 payment. See, e.g., <u>Hartzfeld v. Snyder Township School District</u>, 170 A.2d 355 (Pa. 1961) (Pennsylvania law allows for the recovery of erroneous payments made based on errors of fact.).

**G.     Alternatively, If Plaintiff's Separation Was A WARN Event, TYCO Is Entitled To An Offset Under The Terms Of The 1998 Plan.**

Consistent with the terms of the 1998 plan, if Plaintiff did not experience a WARN event, then TYCO is not entitled to an offset for the notice pay Plaintiff received prior to his separation. However, TYCO is entitled to an offset if a WARN event occurred.

Section 502(a)(3) of ERISA authorizes civil actions "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) **to enforce** any provisions of this subchapter or **the terms of the plan . . ."** 29 U.S.C. § 1132(a)(3) (emphasis added).  Here, the terms in paragraph 5.2 of the 1998 plan require that:

> If the Employer is obligated by law or by contract to pay severance pay, a termination indemnity, notice pay, or the like, or if the Employer is obligated by law to provide advance notice of separation ("Notice Period"), then any Severance Pay hereunder shall be reduced by the amount of any such severance pay, termination indemnity, notice pay or the like, as applicable, and by the amount of any compensation received during any Notice Period.

**P. Ex. 15**.

It is undisputed Plaintiff received 55 days of notice pay and he claims the difference between the number of days of notice he received and the remainder equating to 60 days of notice.  In effect, the sum paid under the 1998 Plan and the sum owed under WARN offset one another.  Thus, Plaintiff may be entitled to WARN notice pay, but he is not entitled to severance under the 1998 Plan as well.  Under ERISA Section 502(a)(3), TYCO is entitled to appropriate equitable relief, which in this case is the identified overpayment.  Under the express terms of the plan, TYCO is entitled to a return of these funds.

## II.     CONCLUSION

For the foregoing reasons, TYCO respectfully requests this Court find in favor of TYCO on all of Plaintiff's claims, or, alternatively, on its counterclaims

Respectfully submitted,

VINCENT CANDIELLO
G. SCOTT PATERNO
One Commerce Square
417 Walnut Street
Harrisburg, PA  17101-1904
717 237-4014

Of Counsel:

MORGAN, LEWIS & BOCKIUS LLP

Dated:  May 24, 2002

### CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.8 (b)(2), I certify this brief complies with the word count limit of the United States District Court for the Middle District of Pennsylvania.  The word count for this brief is 4948 words.

VINCENT CANDIELLO

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing TYCO

Electronics Corporation's Post Trial Memorandum of Law has been served via First

Class U.S. Mail, on this 24th day of May, 2002, upon the following:

> Patricia Carey Zucker, Esquire
> Michael V. Brown, Esquire
> Elliot, Reihner, Siedzikowski, Egan & Balaban
> Governors' Row
> 27 N. Front Street
> P.O. Box 1284
> Harrisburg, PA  17108-1284

CHRISTOPHER M. SCALIA

1-HA/100277.1